IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DARLENE MAAS,<br><br>            Plaintiff,<br><br>vs.<br><br>CITY OF BILLINGS, MONTANA;<br>BILLINGS, MONTANA POLICE<br>DEPARTMENT; CHIEF RICH ST.<br>JOHN, CAPTAIN CONRAD,<br>OFFICER KEIGHTLEY, OFFICER<br>LANGE, OFFICER AGUILAR,<br>OFFICER SCHAFF, and JOHN DOES<br>1-10,<br><br>            Defendants, | CV 19-79-BLG-SPW-KLD<br><br><br>ORDER |

Pro se Plaintiff Darlene Maas has filed a Motion to Compel Discovery pursuant to Federal Rule of Civil Procedure 37 to compel the above-named Defendants to provide complete responses to various interrogatories and requests for production. (Doc. 30). Plaintiff's motion is denied for the reasons set forth below.

1

I.   **Background**

Plaintiff filed this action in state court on June 5, 2019, claiming generally that "[t]he Billings Police Dept. engaged in an extended baseless, biased course of conduct." (Doc 3 at 1). Plaintiff identified four claims for relief set forth verbatim as follows: (1) Defamation – responsible for accident when had no accident, referred to as hit & run driver, trespasser, well-known signal 27; (2) Repeated failure and refusal to adhere to State of Montana Law Enforcement Code of the Ethics 23.13.203; (3) Violation of my Montana Constitutional Rights, Sec. 2, #3) Inalienable Rights, #4) Individual Dignity, #17) Due Process of Law, and; (4) Violation of my U.S. Constitutional Rights, the Bill of Rights, and Amendment 14. (Doc. 3 at 1-2).

On July 18, 2019, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a) based on federal question jurisdiction under 28 U.S.C. § 1331 in light of Plaintiff's federal constitutional claims. Defendants then moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) on the ground that the Complaint as initially filed was so vague, ambiguous, and lacking in factual detail that they could not reasonably frame a response. (Doc. 5). The Court granted Defendants' motion, and Plaintiff filed an Amended Complaint.[1] (Doc.

---

1 Although this document is titled "Plaintiff's Response to Order on Defendants'

14). The Amended Complaint asserts essentially the same four claims, but provides slightly more detail. In Count I for defamation, Plaintiff alleges Defendant law enforcement officers defamed her by identifying her "as responsible for an automobile accident that she did not have or cause," communicating that she was a "hit and run driver" who "left the scene of the accident," and identified her as a "well-known signal 27." (Doc. 14 at 4). In Count II, Plaintiff alleges Defendant law enforcement officers violated the Montana Law Enforcement Code of Ethics by identifying her as a hit and run driver; making unacceptable and unwarranted comments; treating her with disrespect; and refusing to communicate with her regarding inappropriate police treatment. (Doc. 14 at 5-6). In Count III, Plaintiff alleges Defendants violated her due process and other rights under the Montana Constitution by treating her "inequitably and unjustifiably with bias and complete disrespect"; discriminating against her; defaming her; failing "to protect [her] or her property over a long period of time"; and ignoring her repeated "requests for assistance and communication." (Doc. 14 at 7). In Count IV, Plaintiff brings what amounts to a federal constitutional claim under 42 U.S.C. § 1983. She alleges Defendants "knowingly and intentionally engaged in a course of conduct that

---

Motion Fed. R Civ. P. 12(e) for a More Definite Statement and Demand for Jury Trial," in substance it is an Amended Complaint. (Doc. 14).

repeatedly" violated her due process rights under the Fourteenth Amendment "as specified in this Complaint and Claim and Allegations One through Three." (Doc. 14 at 8).

Defendants filed an Answer (Doc. 15), and the parties began corresponding in writing concerning discovery matters. (Docs. 30-1, 32-2). In early February 2020, Plaintiff wrote a letter stating she wanted to begin discovery by obtaining "[a]ny and all materials/documents in any and all formats included in the 'Investigation' of the Plaintiff initiated immediately at the onset of this Complaint" by defense counsel. (Doc. 30-1 at 1). Defendants responded in writing, invoking the attorney work product doctrine as a basis for refusing to produce the materials requested. (Doc. 30-2 at 2).

Then, in a letter dated March 1, 2020, Plaintiff asked Defendants to produce "any and all documents, records, reports, information, notes, phone logs, tape recordings, electronic data records and emails in the possession of the Defendants' (sic) relative to the Plaintiff and/or the Plaintiff's complaint." (Doc. 30-1). Construing Plaintiff's letter as a request for production under Federal Rule of Civil Procedure 34, Defendants responded on March 12, 2020 that the request was "so broad that it would necessarily require the City of Billings to expend a significant amount of time, energy and money to search for any conceivable responsive

documents without any limitation of time, circumstances, or topics." (Doc. 32-2 at 9). Defendants explained that if Plaintiff would provide additional information regarding the dates, location, and circumstances of the alleged events giving rise to her lawsuit, they would be better able to respond to the document requests. (Doc. 32-2).

In a set of eight interrogatories dated February 3, 2020, Plaintiff asked Defendants if they had ever met her, ever had a verbal or written exchange with her, or ever refused to communicate with her, and to explain the circumstances and details. (Doc. 32-3 at 2). Plaintiff also asked Defendants what "'signal 27' refer[s] to in the Billings Police Department," and whether the City of Billings and Billings Police Department had ethics codes addressing certain matters. (Doc. 32-3 at 2). Defendants responded to Plaintiff's written interrogatories and provided her with certain departmental policies and ethics documents. (Doc. 32-4).

On May 8, 2020, Plaintiff filed the pending motion to compel Defendants to provide complete responses to her request for production and written interrogatories. (Doc. 30). Plaintiff complains that Defendants answers to her interrogatories are disingenuous and evasive, and claims they "have records and documents that they are deliberately withholding from the Plaintiff, and from the Court, which invalidate the purpose of Discovery and assure an unfair advantage

and outcome." (Doc. 30 at 5). Defendants have responded to Plaintiff's motion, and the deadline for Plaintiff to file her optional reply brief has passed.

## II.   <u>Legal Standard</u>

The Court has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012). Parties are generally entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

For discovery purposes, relevance is construed broadly to include any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). See also *Dewidar v. National Railroad Passenger Corp.*, 2018 WL 280023 *2 (S.D. Cal. Jan. 3, 2018) (applying *Oppenheimer*'s relevance standard under current version of Rule 26(b)(1)). In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

6

Civ. P. 26(b)(1).

"Rule 37 of the Federal Rules of Civil Procedure provides a mechanism by which a party seeking discovery may request an order compelling the opposing party to fulfill its discovery obligations." *Carlson v. Fedex Ground Package System, Inc.*, 2012 WL 4760889 *1 (D. Mont. Sept. 12, 2012). If a party fails to respond to interrogatories or requests for production, the party seeking discovery may move for an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B); *Carlson*, 2012 WL 47608889 *1. "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

While the moving party has the burden of showing that the discovery sought is relevant, "the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Nei v. Travelers Home and Marine Insurance* Company, 326 F.R.D. 652, (D. Mont. 2018). The party resisting discovery bears "the burden of clarifying, explaining, and supporting its objections" and showing why the discovery should not be allowed. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

### III.   **Discussion**

Defendants argue Plaintiff's motion to compel should be denied because: (1) Plaintiff failed to comply with the meet and confer requirements of Federal Rule of Civil Procedure 37 and District of Montana Local Rule 26.3; (2) the discovery requests are vague, overbroad, unduly burdensome, and not reasonably calculated to lead to admissible evidence; and (3) Plaintiff requests material that is protected from disclosure by the work product doctrine and attorney-client privilege.

### A.   **Failure to Meet and Confer**

Under Federal Rule of Civil Procedure 37(a)(1), a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer" with the party from whom the discovery is sought "in an effort to obtain it without court action." In addition, District of Montana Local Rule 26.3(c)(1) states that "[t]he court will deny any discovery motion unless the parties have conferred concerning all disputed issues before the motion is filed." L.R. 26.3(c)(1). Local Rule 26.3 specifies that all motions to compel discovery must set forth the basis for the motion, certify that the parties have conferred concerning all disputed issues, and include as an exhibit the full text of the discovery sought and the full text of the response. L.R. 26.3(c)(2)(A)-(C).

The purpose of these "meet and confer" obligation is "to lessen the burden

8

on the court and reduce the unnecessary expenditures of resources by litigants, through promotion of informal, extra-judicial resolution of discovery disputes" *Osborne v. Billings Clinic*, 2015 WL 1643379, at *1 (D. Mont. Apr. 13, 2015) (quoting *Harter v. CPS Sec. (USA), Inc.,* 2013 WL 4040090, at *3 (D. Nev. Aug. 5, 2013)). "The mere sending of a written, electronic, or voice-mail communication does not satisfy this requirement. Rather, this requirement can be satisfied only through direct dialogue and discussion in a face-to-face meeting, in a telephone conversation, or in detailed, comprehensive correspondence." L.R. 26.3(c)(1).

Here, Plaintiff did not certify that she "in good faith conferred or attempted to confer" with Defendants before filing her motion to compel, and the record reflects that she in fact failed to do so as required by Rule 37(a)(1) and L.R. 26.3(c)(1).[2] Although the parties exchanged a few letters regarding discovery matters, they do not satisfy the meet and confer requirement. As described above, these letters reflect that Defendants consistently asked Plaintiff for details regarding the dates, location, and context of the alleged events giving rise to her lawsuit before responding to her discovery requests, but that Plaintiff did not

---

2 As Defendants correctly point out, Plaintiff also failed to include the full text of her discovery requests and Defendants' responses, as required by Local Rule 26.3(c)(2)(C). Mindful of Plaintiff's pro se status, however, Defendants have provided this information as exhibits to their response brief. (Docs. 32-3, 32-4).

provide any additional information. Plaintiff does not claim to have made any attempt to meet and confer with defense counsel regarding these discovery issues before filing her motion to compel.

Thus, Plaintiff's motion to compel is properly denied based on her failure to satisfy the meet and confer requirements of the federal and local rules governing discovery. Even if she had satisfied these requirements, however, Plaintiff's motion to compel fails on the merits.

## B.    Vague, Overbroad, and Unduly Burdensome Discovery Requests and Adequacy of Defendants' Responses

Plaintiff served Defendants with a set of eight interrogatories, the first four of which read as follows:

1.    Have you ever met the Plaintiff? Describe the circumstances?

2.    Have you ever had a verbal interchange with the Plaintiff? Under what circumstances? Please explain details.

3.    Have you ever exchanged written communication with the Plaintiff? Under what circumstances? Please explain details.

4.    Have you ever refused to communicate with the Plaintiff, verbally and/or in writing? Please explain the circumstances and details.

(Doc. 32-3).

The individual Defendants answered these interrogatories to the best of their recollection. Defendants Lange, Aguilar, St. John, Conrad, and Keightley each

stated that they did not have any specific recollection of having met or communicating directly with Plaintiff, or refusing to do so. (Doc. 32-4 at 3-4, 40-41, 48-49, 67-68, 92-93). They all stated that if Plaintiff "provided a more specific time frame, a brief description of the possible circumstances, and provided an opportunity to review any official reports or other documents regarding the events," they might be able to refresh their recollections. (Doc. 32-4 at 3-4, 40-41, 48-49, 67-68, 92-93). Defendant Schaff recalled one personal interaction and one verbal interchange with Plaintiff, which he described in his discovery responses. (Doc. 32-4 at 83-85).

Defendants City of Billings and the Billings Police Department objected to the first three interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (Doc. 32-4 at   20-22). They also responded substantively to the first interrogatory, stating that after conducting a reasonable search of records held in the normal course of business, "the last known documented contact with [Plaintiff] was in October 2012" and involved Defendant Schaff. (Doc. 32-4 at 20-21). The Billings Defendants further stated that if Plaintiff provided a more specific time frame and a description of the circumstances and individuals involved, they were willing to conduct additional record searches. (Doc. 32-4 at 21-22). In response to Plaintiff's

fourth interrogatory, Defendant City of Billings stated it was "not aware of any instances where its employees refused to reasonably communicate with the Plaintiff." (Doc. 32-4 at 22)

Plaintiff fails to explain how these responses are deficient, other than to accuse Defendants of being evasive in their answers and deliberately withholding documents and information. Contrary to Plaintiff's arguments, the record reflects that Defendants have made a good faith effort to respond to these interrogatories, and defense counsel has consistently demonstrated a willingness to meet and confer with Plaintiff to clarify her discovery requests. The Court agrees with Defendants that these interrogatories are vague, overbroad, and unduly burdensome in that they are not limited to any particular time period, and do not specify the subject matter involved. Because Defendants have adequately responded given the vagueness of these requests, Plaintiff's motion to compel more complete responses to Interrogatories 1 through 4 is denied.

Plaintiff's Interrogatories five through eight read as follows:

5.   What does "signal 27" refer to in the Billings Police Department?

6.   Does the Billings Police Department have an Ethics Code that specifically addresses its employees behavior, actions, attitude and treatment of Billings residents? Explain details or provide copy.

7.   Does the City of billings have an Ethics Code that specifically addresses its employees behavior, actions, attitude and treatment of

Billings residents? Explain details or provide copy.

8.   Does the City of Billings have an Ethics Code that specifically addresses its elected officials behavior, actions, attitude and treatment of Billings residents? Explain details or provide copy.

(Doc. 32-3 at 2).

The Defendants have adequately answered these interrogatories, and have provided Plaintiff with copies of various responsive Ethics Code sections and City of Billings Police Department policies. (Doc. 32-4). Plaintiff has not shown that Defendants' responses are in any way deficient. Accordingly, Plaintiff's motion to compel is denied as to Interrogatories 5 through 8.

To the extent Plaintiff's March 1, 2020 letter seeking "any and all documents, records, reports, information, notes, phone logs, tape recordings, electronic data records and emails in the possession of the Defendants" relating to the Complaint" can be construed as a Rule 34 request for production, the Court agrees with Defendants that the request as drafted is overbroad, unduly burdensome, and vague. Defendants responded to Plaintiff's request in writing, objecting that it was "so broad that it would necessarily require the City of Billings to expend a significant amount of time, energy and money to search for any conceivable responsive documents without any limitation of time, circumstances or topics." (Doc. 32-2 at 9). Defendants stated that if Plaintiff would provide the

13

dates, location, and some factual context, they would be better able to response to her document requests. (Doc. 32-2 at 9).

Like Plaintiff's original Complaint, the Amended Complaint does not describe the events giving rise to Plaintiff's claims, does not provide any dates or locations, and does not provide any factual context or detail. Plaintiff's request for production is similarly lacking in detail, and is so vague and overbroad that Defendants could not reasonably be expected to comply.3  Plaintiff's motion to compel is thus denied as to this request for production.

### C.    Attorney Work Product Doctrine

To the extent Plaintiff's February 2, 2020 letter requesting "[a]ny and all materials/documents in any and all formats included in the 'Investigation' of the Plaintiff initiated immediately at the onset of this Complaint" by defense counsel (Doc. 30-1 at 1), can be construed as a request for production, the Court agrees with Defendants that it impermissibly seeks material that is protected under the attorney work product doctrine. Defendants responded to Plaintiff's request in writing, objecting that if Plaintiff was in fact "asking for any information which

---

3 The Court notes that Defendants have provided the records they have located regarding Plaintiff's disputes with her neighbors from several years ago, including those relating to Defendant Schaff's encounter with Plaintiff in October 2012. (Doc. 32-1).

my office may have gathered, acquired or developed in the legal defense of our clients since you initiated this lawsuit, any such information is protected from disclosure under the attorney work product doctrine." (Doc. 32-2 at 2). As drafted, this request seeks materials and documents generated in anticipation of litigation, which fall squarely under the attorney work product doctrine. Therefore, Plaintiff's motion to compel the production of these materials is denied.

## IV.    Conclusion

For the reasons discussed above,

IT IS ORDERED that Plaintiff's Motion to Compel Discovery (Doc. 30) is DENIED.

DATED this 18th day of June, 2020.

Kathleen L. DeSoto
United States Magistrate Judge