IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DARLENE MAAS,<br><br>               Plaintiff,<br><br>vs.<br><br>CITY OF BILLINGS, MONTANA;<br>BILLINGS, MONTANA POLICE<br>DEPARTMENT; CHIEF RICH ST.<br>JOHN, CAPTAIN CONRAD,<br>OFFICER KEIGHTLEY, OFFICER<br>LANGE, OFFICER AGUILAR,<br>OFFICER SCHAFF, and JOHN DOES<br>1-10,<br><br>               Defendants. | CV 19-79-BLG-BMM-KLD<br><br>FINDINGS &<br>RECOMMENDATION<br><br>and<br><br>ORDER |

Plaintiff Darlene Maas, who is proceeding pro se, brings this action against the City of Billings, the City of Billings Police Department, and six Billings law enforcement officers, alleging federal constitutional claims under 42 U.S.C. § 1983 and several state law theories of recovery. Defendants move for summary judgment on all claims. (Docs. 51 and 53). For the reasons set forth below, Defendants' motions for summary judgment should be granted and this matter should be dismissed.

1

I.    **Background**

Maas filed this action in state court on June 5, 2019, alleging generally that "[t]he Billings Police Dept. engaged in an extended, baseless, biased course of conduct." (Doc. 3, at 1). Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1441(a) based on federal question jurisdiction under 28 U.S.C. § 1331 in light of Maas's federal constitutional claims. Defendants then moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) on the ground that the Complaint as initially filed was so vague, ambiguous, and lacking in factual detail that they could not reasonably frame a response. (Doc. 5). The Court granted Defendants' motion, and Maas filed an Amended Complaint on December 17, 2019.[1]  (Doc. 5).

The Amended Complaint names the City of Billings and its municipal department, the City of Billings Police Department (hereinafter "City of Billings")[2]

---

[1] Although this document is titled "Plaintiff's Response to Order on Defendants' Motion Fed. R. Civ. P. 12(e) for a More Definite Statement and Demand for Jury Trial," the Court construes Maas's filing as an Amended Complaint.

[2] It is well-settled that municipal departments are not proper defendants under § 1983. Thus, Maas's § 1983 claims against the City of Billings Police Department properly lie against the City of Billings itself. See e.g. *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005); *Sanders v. Aranas*, 2008 WL 268972, at *2-3 (E.D. Cal. Jan. 29, 2008). Likewise, Maas's state law claims against the City of Billings Police Department are more properly analyzed as claims against the relevant political subdivision, the City of Billings. See Mont. Code Ann. § 2-9-

2

as Defendants. The Amended Complaint also identifies the following City of Billings law enforcement officers as Defendants: Officer Tom Keightley, Officer Brandon Lange, Officer Jordan Aguilar, Officer Shane Schaff, Sergeant Scott Conrad, and Captain Rich St. John (collectively "Individual Defendants")[3].

Maas asserts four claims for relief in her Amended Complaint: (1) defamation against the City of Billings, Officer Lange and Officer Aguilar (Count I); (2) violations of the Montana Law Enforcement Code of Ethics against the Individual Defendants (Count II); (3) violations of Article II, sections 3, 4, and 17 of the Montana Constitution against all Defendants (Count III) and; (4) violations of the Bill of Rights and Fourteenth Amendment to the United States Constitution against all Defendants under § 1983 (Count IV). Maas's prayer for relief includes a request for compensatory and punitive damages, along with injunctive relief requiring "extensive training in the areas of bias, discrimination, ethics and communication" for the City of Billings and the Billings Police Department. (Doc.

---

101(1), (3), (5).

[3] The Amended Complaint does not specify whether Maas is bringing suit against the Individual Defendants in their individual or official capacities. Because Maas's Amended Complaint must be liberally construed in her favor, the Court presumes that the Individual Defendants are being sued in their individual capacities. See e.g., *Lapina v. Gierlach*, 2021 WL 191635, at *7 (D. Haw. Jan. 19, 2021) (citing *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho,* 42 F.3d 1278, 1284 (9th Cir. 1994).

14).

The City of Billings and Individual Defendants move for summary judgment on all claims.

## II.   <u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

When the non-moving party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. See e.g., *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the moving party may satisfy its initial

burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims. *Celotex*, 47 U.S. at 325.

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576

(9th Cir. 1987). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

## III.    Discussion

### A.    Authentication of Evidence

A party moving for or opposing summary judgment must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). See also Local Rule 56.1(a)(2) and (b)(2). While the material presented in summary judgment proceedings "does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence[]" later at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). See also *Celotex.*, 477 U.S. at 324.

To be admissible, any specific item of documentary evidence must be authenticated by other evidence sufficient "to support a finding that the matter in question is what its proponent claims." *Orr v. Bank of America, NT & SA*, 285 F.3d

764, 773 (9th Cir. 2002). Evidentiary materials or exhibits may be "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). See also *Orr*, 285 F.3d at 774 (adding that authentication may occur by any manner permitted by Fed. R. Evid. 901(b) or 902). Absent proper authentication, however, a court may not consider the exhibit in ruling on a summary judgment motion. *Orr*, 285 F.3d at 773 (citing cases).

Where a party fails to address another party's factual assertion the court may consider the fact "undisputed for purposes of the motion[, ... and] grant summary judgment if the motion and supporting material — including the facts considered undisputed — show that the movant is entitled to it[.]"   Fed. R. Civ. P. 56(e)(2) and (3).

In response to the pending motions for summary judgment, Maas has submitted a single document titled "Statement of Undisputed Facts" which includes her statement of undisputed facts, her response brief, and a 68-page exhibit. (Docs. 60 & 60-1). The 68-page exhibit is titled "Exhibit C" and is divided into six categories: (1) "Billings Police Department + Chief St. John"; (2) "Officers Lange + Aguilar"; (3) "Officers Schaff + Keightly + Capt. Conrad"; (4) "City of Billings"; (5) "Payne"; and (6) "POST". (Doc. 60-1). Maas's statement of

undisputed facts primarily consists of conclusory and argumentative statements, and refers generally to Exhibit C for support. (Doc. 60 at 1-8). Exhibit C includes several letters, photographs, handwritten notes, record requests, City of Billings Police Department dispatch narratives, City of Billings Code Enforcement Division violation notices, and a Public Safety Officer Complaint Form. (Doc. 60-1). These documents are not authenticated by an affidavit or declaration, and with a few possible exceptions, the documents are not properly authenticated under Federal Rule of Evidence 901 or self-authenticated under Rule 902. To the extent these documents are not properly authenticated, they are not properly before the Court on summary judgment.

In addition, Defendants have provided copies of Maas's discovery responses, which demonstrate that she did not produce the documents contained in Exhibit C during discovery. (See Docs. 55; 55-2). Because Maas did not produce these materials during discovery and there is no indication that her failure to do so was substantially justified, she cannot rely on them to defeat summary judgment. See *Morin v. Nielsen*, 2020 WL 6701423, +*3 (D. Mont. Nov. 13, 2020); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information…to supply evidence on a

motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.")

Nevertheless, in light of Maas's pro se status, the Court will consider Exhibit C and its contents when discussing Defendants' motions for summary judgment. See e.g. *Paulson v. Carter*, 2006 WL 381951, at *1 (D. Or. Feb. 16, 2006) (declining to strike evidence that was not properly authenticated in the interest of giving the plaintiff the benefit of every doubt and because the evidence was not outcome determinative); *Estate of Elkan v. Hasbro, Inc.*, 2005 WL 3095522, at *2 n. 2 (D. Or. Nov. 18, 2005) (considering documents that were not properly authenticated in the interest of giving the plaintiff the benefit of every inference). As discussed below, even considering the contents of Exhibit C, the Individual Defendants and City of Billings have demonstrated that they are entitled to judgment as matter of law.

## B.     State Law Claims (Counts I-III)

### 1.     Defamation (Count I)

Under Montana law, "[d]efamation is effected by either libel or slander." *Lee v. Traxler*, 384 P.3d 82, 86 (Mont. 2016). "Slanderous words are spoken, whereas libelous words are written." *Tindall v. Konitz Contracting Inc.*, 783 P.2d 1376, 1382 (Mont. 1989). Libel is defined by statute as "a false and unprivileged

publication by writing…that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Mont. Code Ann. § 27-1-802. Slander, in turn, is defined as follows:

> Slander is a false and unprivileged publication other than libel that:
>
> (1) charges any person with crime or with having been indicted, convicted, or punished for crime;
>
> (2) imputes in a person the present existence of an infectious, contagious, or loathsome disease;
>
> (3) tends directly to injure a person in respect to the person's office, profession, trade, or business…;
>
> (4) imputes to a person impotence or want of chastity; or
>
> (5) by natural consequence causes actual damage.

Mont. Code Ann. § 27-1-803.

The test for defamation is a stringent one. *McKonkey v. Flathead Electric Co-op*, 125 P.3d 1211, 1229 (Mont. 2005). The threshold question "is whether the statements, even if false, are capable of bearing a defamatory meaning." *McConkey*, 125 P.3d at 1130. For defamatory words to be actionable, they "must be of such a nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided." *McConkey*, 125 P.3d at 1130. Whether a statement is defamatory may be decided

10

by the court as a matter of law. *McConkey*, 125 P.3d at 1130. See also *Hale v. City of Billings*, 986 P.2d 413, 417 (Mont. 1999).

One additional "requirement of a defamation action is that the communication must be unprivileged." *Ray v. Connell*, 371 P.3d 391, 396 (Mont. 2016). A communication is privileged if it is made "in the proper discharge of an official duty." Mont. Code Ann. § 27-1-804(1). "When a public official is acting within the scope of his or her authority, communications within that scope are privileged." *Wolf. v. Williamson*, 889 P.2d 1177, 1179 (Mont. 1995). The privilege created by Mont. Code Ann. § 27-1-804 "is an absolute privilege against liability for defamation and is therefore unaffected by the presence of malice." *Ray*, 371 P.3d at 396. "If privileged, truth or falsity of [a] statement is irrelevant and, consequently, a plaintiff cannot recover damages under a defamation theory." *Hale v. City of Billings*, 986 P.2d 413, 421 (Mont. 1999).

A claim for defamation also requires "[p]ublication of defamatory matter…to one other than the person defamed," meaning that the defamatory statement must be communicated to a third party. *McLeod v. State ex rel. Dep't of Transp.*, 206 P.3d 956, 960 n. 2 (Mont. 2009) (quoting Restatement (Second) of Torts § 577(1)(1977)) ("Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.")

11

The statute of limitations on a defamation action is two years. *Wagemann v.*
*Robinson*, 2015 WL 3899226, at *24 (D. Mont. 2015) (citing Mont. Code Ann. §
27-2-204).

a.    *Individual Defendants*

In Count I, Maas alleges that Officer Lange defamed her by "falsely
identif[ying] [her] as responsible for an automobile accident that she did not have
or cause" and "communicat[ing] that [she] 'left the scene' of the accident, thereby
labeling [her] as a 'hit and run' driver which is a criminal act." Maas further
alleges that Officer Aguilar defamed her by "identifying and labeling her as a
'well-known signal 27'." (Doc. 13 at 4).

Defendants argue that Maas's defamation claim against Officers Lange and
Aguilar fails as a matter of law because she has not established a prima facie case
of defamation. The Court agrees.

Defendants have submitted copies of Maas's discovery responses, which
reflect that she did not provide any facts or evidence during the discovery process
in support of her allegations of defamation against Officers Lange and Aguilar.
Maas's discovery responses do not identify what defamatory words were said or
written, who made the defamatory statements, or when the events giving rise to her
defamation claim took place. (Doc. 55, at 4 ¶ 8; Doc. 55-2). Maas did not identify

or produce any evidence during discovery to support her allegation that Officer

Lange falsely identified her as causing an automobile accident or labeled her as a

hit and run driver. (Doc. 55, at 4 ¶ 9; Doc. 55-2). Likewise, Maas's discovery

responses do not identify any factual or evidentiary basis for her allegations against

Officer Aguilar. (Doc. Doc 55, at 4-5 ¶¶ 8-10; 55-2).

In response to Defendants' motion for summary judgment, Maas has

submitted a number of documents that she maintains provide factual and

evidentiary support for her defamation claim against Officers Lange and Aguilar.

(Doc. 60-1, at 21-29). Even assuming these documents are properly considered,

they are insufficient to establish prima facie case of defamation as required to

survive summary judgment.

These documents include a June 7, 2017 "CAD Narrative" report by Officer

Lange regarding a private property accident, stating that a "[p]arked vehicle was

hit by the at fault vehicle, then at fault driver parked nearby and went into

Walmart. At fault driver did not respond to multiple pages. At fault driver's

insurance was contacted to verify active coverage. Geico confirmed coverage and

advised they would contact the driver and handle the claim. No further [] at this

time." (Doc. 60-1, at 23). The copy submitted by Maas to the Court includes what

appears to be an undated handwritten note by her denying that she had "an accident

or hit this vehicle." (Doc. 60-1, at 23). Maas has also submitted two letters she received from Geico Indemnity Company regarding the incident (Doc. 60-1 at 21-22), and copies of her correspondence with the City of Billings Police Department reflecting that because the incident was a private property accident, no accident report was prepared. (Doc. 60-1 at 24-28). Finally, Maas has provided an October 10, 2012 "Dispatch Narrative" by Officer Aguilar reflecting that he spoke with the complainant who stated "that he shared the property line with a neighbor that is known to be a signal 27" about a dispute over yardwork. (Doc. 60-1 at 29). The copy submitted by Maas to the Court also includes what appears to be an undated handwritten note by her claiming that the "narrative is completely false." (Doc. 60-1 at 29).

Maas has not shown that these documents contain any statements or communications that, even if false, meet the stringent standard for defamation. The CAD Narrative and Dispatch Narrative do not identify Maas by name, and none of the documents submitted by Maas contain any statements or communications that would have exposed Maas to hatred, contempt or ridicule, or would have caused others to shun or avoid her. Nor do they contain any statements accusing Maas of having committed a crime or any statements that would, by natural consequence, cause Maas actual damages.   Because these documents do not contain any

14

statements or communications that are reasonably capable of bearing a defamatory meaning, they do not provide a basis for an actionable defamation claim.

On the face of "Exhibit C", Maas writes that "[t]his is not complete & total. Would like ability to add, revise, etc." (Doc. 60-1 at 1). But Maas had ample to seek evidence in support of her claims during the discovery process, and does not explain what additional evidence or facts she might possibly provide. Instead, Maas offers only "unsupported conjecture or conclusory statements" regarding unspecified alleged wrongful conduct and constitutional violations, which is not sufficient to defeat summary judgment. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Maas's defamation claim against Officers Lange and Aguilar fails as a matter of law for a number of additional reasons. First, to establish a prima facie defamation claim, Maas must show that the statements at issue were unprivileged. *Ray,* 371 P.3d at 396. Defendants argue that any allegedly defamatory statements by Officers Lange and Aguilar were made within the scope of their authority and official duties as police officers, which means those statements are privileged under Montana law. Defendants have provided the affidavit of Chief St. John, who states that any of the "known alleged actions taken [by Officers Lange and Aguilar] with respect to Maas and her claims in this action were performed in the

course and scope of [their] employment as Officer[s] with the Billings Police Department." (Doc. 57 at ¶¶ 3-4).

While Maas maintains in response to Defendants' motion that Officers Lange and Aguilar were not acting in the course and scope of their employment (Doc. 60 at 15), she has not pointed to any facts or produced any evidence that would even arguably support such a determination. The CAD Narrative and Dispatch Narrative are the only two documents submitted by Maas that contain any statements whatsoever by Officers Lange and Aguilar. (Doc. 60-1, at 23, 29). Because any statements in these police narratives were clearly made within the scope of Officer Lange and Aguilar's authority and official duties as police officers, the statements are privileged as a matter of law and cannot provide the basis for a defamation claim. See Mont. Code Ann. § 27-1-804(1); *Roos v. City of Miles City*, 439 P.3d 387, 388 (Mont. 2019) (holding that defamation claim was properly dismissed on summary judgment because statements made by chief of police during the discharge of his official duties were privileged as a matter of law).

Second, a prima facie defamation claim requires evidence of publication to a third party. *McLeod*, 206 P.3d at 960 n. 2. Maas has not produced any evidence that the statements she attributes to Officers Lange and Aguilar, including those in

16

the CAD Narrative and Dispatch Narrative, were communicated to any third party. Absent evidence of publication, Maas cannot make out a prima facie claim of defamation under Montana law.

Finally, Defendants argue Maas's defamation claim against Officers Lange and Aguilar is barred by the two-year statute of limitations. See Mont. Code Ann. § 27-2-204(3). Under Montana law, a claim for defamation accrues, and the two-year statute of limitations begins to run, on the date of the event triggering the claim. See *Montana Supreme Court Com'n on Unauthorized Practice of Law v. O'Neil*, 147 P.3d 200, 209 (Mont. 2006). Because Maas filed this action in state court on June 5, 2019, she cannot maintain a defamation claim based on statements made prior to June 5, 2017. As reflected in her discovery responses, Maas has not provided any information identifying when the events giving rise to her defamation claim took place. (Doc. 55, at ¶ 8).

After conducting a search of police department records using Maas's name, Defendants were only able to locate five incident reports, all of which involved different officers or were related to events occurring between April 15, 2010 and October 22, 2012. (Doc. 55, at ¶ 17; Docs. 57-1 through 57-5). Officer Lange was not part of the Billings Police Department until 2014, which means that he could not have been involved in any of those interactions with Maas. (Doc. 55, at ¶ 2).

17

While the CAD Narrative authored by Officer Lange on June 7, 2017 is within the limitations period, it does not provide a basis for a viable defamation claim for the reasons set forth above.

Likewise, Officer Aguilar was employed as a police officer with the Billings Police Department until June 12, 2015, which means that any interactions he may have had with Maas necessarily occurred outside the two-year limitations period. (Doc. 55, at ¶ 3). In addition, to the extent Maas alleges defamation based on Officer Aguilar's October 10, 2012 "Dispatch Narrative," her claim is barred by the statute of limitations. (Doc. 60-1 at 29).

In response to the Defendants' motion for summary judgment, Maas argues that her defamation claims "are within the Statute of Limitations as they still continue today" and "[t]hey are not actions that happened in the past and are over with." (Doc. 60 at 20). For support, Maas has submitted several letters and documents related to what appears to be an ongoing dispute with her neighbor (Doc. 60-1 at 57-64) and a Public Safety Officer Complaint Form she completed on August 15, 2020. (Doc. 60-1 at 66). Even assuming these documents are properly considered by the Court, they do not contain any allegedly defamatory statements, and do not provide a basis for applying the continuing tort doctrine or

tolling the statute of limitations on Maas's defamation claim against Officers
Lange and Aguilar.

For all of the above, reasons, Maas's defamation claims against Officer
Lange and Aguilar should be summarily dismissed.

> b.   *City of Billings*

In Count I, Maas alleges the City of Billings is liable for defamation because
it "uses a 'secret code' when communicating." (Doc. 14 at 4). Maas further alleges
the City of Billings "knowingly participate[d]" in the allegedly defamatory conduct
of using a "'secret code' when communicating," such as when Officer Aguilar
allegedly identified and labeled her as a "well-known signal 27." (Doc. 14 at 4).

The City of Billings argues Maas's defamation claim fails as a matter of law
for many of the same reasons that Maas's defamation claim against Officers Lange
and Aguilar fails. First, the City of Billings maintains that Maas has not established
any of the elements required for a prima facie defamation claim because she has
not alleged or pointed to any evidence that the City of Billings made any
statements about her that were both false and capable of defamatory meaning. In
support of its motion for summary judgment, the City of Billings has produced
evidence demonstrating that its police officers use professional communication
codes when they respond to calls and interact with citizens for safety reasons and

19

to maintain confidentiality. (Doc. 55 at ¶ 13). The term "signal 27" is one of these codes, and has been used through radio traffic to describe an individual who may have a mental illness or mental condition, and to maintain confidentiality while doing so. (Doc. 55 at ¶ 13). Due to their confidentiality, these professional communication codes are not capable of bearing a defamatory meaning. The intended confidentiality of these communication codes also defeats the publication element of Maas's defamation claim, which requires evidence that the allegedly defamatory statement was communicated to a third-party. Finally, the evidence submitted by City of Billings demonstrates that these communication codes are used in a professional capacity by law enforcement officers in the discharge of their official duties and within the scope of their authority (Doc. 55 at ¶ 13), which means the communications are privileged under Montana law. See Mont. Code Ann. § 27-1-804(1); *Wolf*, 889 P.2d at 1179.

The City of Billings further argues that Maas's defamation claim is barred by the two-year statute of limitations. See Mont. Code Ann. § 27-2-204(3). Maas's discovery responses do not identify what defamatory words were said or written, who made the defamatory statements, or when the events giving rise to her defamation claim took place. (Doc. 55, at 4 ¶ 8; Doc. 55-2). The only example Maas provides of the "secret code" implemented by the Billings Police Department

is Officer Aguilar's use of the term "signal 27" as alleged in her Amended Complaint. (Doc. 14, at 4). As discussed above, the City of Billings has come forward with uncontroverted evidence that Officer Aguilar left the Billings Police Department in 2015. (Doc. 55, at ¶ 3). Because Maas did not file this action until June 5, 2019, any defamation claim against the City of Billings based on those events is barred by the statute of limitations.

Again, Maas has responded to the City of Billings' motion for summary judgment by submitting several documents that she did not identify or produce during discovery. (Doc. 60-1 at 1-19, 37-56). These documents include various letters, handwritten notes, photographs, requests for public records, and Billings Montana City Code violation notices. (Doc. 60-1 at 1-19, 37-56). Even assuming these documents are properly considered by the Court, they do not contain any defamatory statements concerning Maas and are insufficient to establish the essential elements of a prima facie defamation claim against the City of Billings. Furthermore, with one apparent exception, these documents are either undated or from the period prior to June 5, 2017, which means that any defamation claim based on these documents would be barred by the statute of limitations. The only document that bears a date from within the limitations period is a letter by Maas to

the Billings Code Enforcement Division, which provides no evidentiary support for a defamation claim. (Doc. 60-1 at 55).

For all of the above, reasons, Maas's defamation claims against the City of Billings should be summarily dismissed.

### 2. Montana Law Enforcement Code of Ethics (Count II)

#### a. *Individual Defendants*

In Count II of the Amended Complaint, Maas alleges that each Individual Defendant "knowingly, willingly and maliciously violated Montana Law Enforcement Code of Ethics 23.13.203." (Doc. 14, at 5). She claims that Officer Lange identified her "as causing an accident and labeling [her] as a hit and run driver." (Doc. 14, at 5). Maas alleges that Officer Schaff made "unacceptable, unwarranted comments" and treated her "with complete disrespect" after she placed a call for police "assistance due to repeated vandalism and harassment." (Doc. 14, at 5). She claims that Officer Aguilar identified her as a "well-known signal 27," and alleges that Sergeant Conrad "[r]effused [sic] to speak to [her] or make future contact when requested regarding inappropriate police treatment (incident w/Schaff)." (Doc. 14, at 5). Maas further alleges that when she "inquired if there was an Ombudsman with the Billings Police Department due to Billings Police Department failure to communicate or cite perpetrators of ongoing criminal

22

mischief and harassment," Officer Keightly "replied in a rude, threatening tone with one word – 'MOVE!'" (Doc. 14, at 5-6). Finally, Maas alleges that Chief St. John "ignored" and "NEVER responded" to her "efforts to communicate with him regarding the criminal mischief." (Doc. 14, at 6).

The Individual Defendants argue they are entitled to summary judgment on Count II for the threshold reason that Maas has not provided any factual or evidentiary support for her allegations. The Court agrees.

The Montana Law Enforcement Code of Ethics to which Maas refers in her Amended Complaint is set forth in Mont. Admin. R. 23.13.203. "All public safety officers who have been hired or employed by any agency or entity in Montana" must abide by this code of ethics, which contains several subsections. Mont Admin R. 23.13.203(3)(a)-(i). The Amended Complaint does not specify what subsections Maas claims each Individual Defendant violated, and Maas's discovery responses do not contain that information either.[4] (Doc. 55-2). Maas did not produce any evidence during discovery to support her allegations against the Individual

---

[4] As discussed below, Maas has submitted a Public Safety Officer Complaint form she completed on August 15, 2020, which alleges without any specific factual support that the Individual Defendants violated the "Montana Public Safety Officers Code of Ethics 23.13.203, specifically 4(aa)(b)(c) & (i)." (Doc. 60-1).

Defendants, and did not specify when or where the alleged events occurred. (Doc. 55 at ¶¶ 18-25).

The Individual Defendants explain that after conducting a search of police department records using Maas's name, they were only able to locate one incident report involving Maas and one of the Individual Defendants.[5]  (Doc. 55 at ¶ 17). The report describes an incident that took place on October 22, 2012, when Officer Schaff responded to call from Mass regarding "suspicious activity," which turned out to be a dispute between neighbors in which Maas admitted to cutting up a part of her neighbor's lawn. (Doc. 55, at ¶ 30). Without any evidentiary or factual support for her allegations, the Individual Defendants argue, Maas's claim for violation of the Montana Law Enforcement Code of Ethics necessarily fails.

In response, Maas simply refers to "Exhibit C." The Court fails to see how any of the letters, handwritten notes, photographs, dispatch narratives, requests for public records, and city code violation notices provide any specific factual or evidentiary support for Maas's allegations that the Individual Defendants violated the Montana Law Enforcement Code of Ethics.

Exhibit C also contains a Public Safety Officer Complaint Form dated

---

[5] The other incident reports located by Defendants using Maas's name all involved officers who are not named as defendants. (See Docs. 57-1 through 57-5).

August 15, 2020, which alleges without any specific factual support that the

Individual Defendants violated the "Montana Public Safety Officers Code of

Ethics 23.13.203, specifically 4(a)(b)(c) & (i)." (Doc. 60-1). This document was

apparently completed by Maas more than one year after she filed this case, and

does not provide any factual or evidentiary support for her claim that the Individual

Defendants violated these provisions. Because Maas has not provided any

evidentiary or factual support for her allegations, her claim for violations of the

Montana Law Enforcement Code of Ethics is subject to summary dismissal.

Even if Maas had come forward with some evidentiary support for her

allegations, the Individual Defendants argue they are entitled to summary judgment

on Count II because Maas has not shown that a claim for violations of Mont.

Admin R. 23.13.203 is legally cognizable, and even if it is, Maas did not follow the

required procedure for bringing such a claim. There are established procedures for

bringing allegations of misconduct against a public safety officer, and potentially

seeking judicial review. See Mont. Admin. R. 23.13.703; Mont. Admin R.

23.13.704. Although Maas has submitted a copy of Public Safety Officer

Complaint Form she completed nearly one year after she initiated this lawsuit,

there is no evidence that she followed any of the requisite procedures for

addressing her allegations as to violation of the code of ethics prior to filing this

lawsuit. (Doc. 55 at ¶ 32; Doc. 60-1 at 66). See *Speer v. Dep't of Corr.*, 458 P.3d 1016, 1030-31 (Mont. 2020). Accordingly, the Individual Defendants are entitled to summary judgment as to Count II of the Amended Complaint.

b.     *City of Billings*

As the City of Billings correctly points out in its motion for summary judgment, Maas does not appear to allege in Count II of the Amended Complaint that the City of Billings violated the Montana Law Enforcement Code of Ethics or seek to hold it liable either directly or under a respondeat superior theory. (Doc. 14, at 5-6). Even if Maas did intend to bring such a claim, the City of Billings could not be held liable for a direct violation of the Montana Law Enforcement Code of Ethics because it only applies to individual public safety officers. Mont. Admin. R. 23.13.203. Likewise, the City of Billings cannot be held under a theory of respondeat superior because, as discussed above, Maas's claim against the Individual Defendants for violations of the Montana Law Enforcement Code of Ethics is subject to summary dismissal. Accordingly, to the extent Count II of the Amended Complaint can be liberally construed in Maas's favor as having been alleged against the City of Billings, the City of the Billings is entitled to summary judgment.

3.     Montana Constitutional Claims

26

In Count III of the Amended Complaint, Maas alleges the Individual Defendants and the City of Billings violated her rights under the following sections of the Montana Constitution: Article II, Section 3 – Inalienable Rights; Section 4 – Individual Dignity; and Section 17 – Due Process of Law. (Doc. 14 at 6). Mass claims that "[e]ach of the Defendants to this complaint knowingly and intentionally engaged in a course of conduct that repeatedly violated and denied [Maas] each of these rights." Maas alleges the Defendants "have treated [her] inequitably and unjustifiably with bias and complete disrespect; discriminated against [her]; defamed [her] and failed to protect [her] or her property over a long period of time; left [her] to protect and defend herself and her property; ignored repeatedly requests for assistance and communication; and protected the perpetrators of crimes." (Doc. 14, at 7).

Defendants argue they are entitled to summary judgment on Count III in its entirety because Maas has not provided any factual detail or evidence to substantiate her conclusory allegations of constitutional violations. As reflected in Maas's discovery responses, she has not identified what actions were allegedly take by which Defendants, where such actions allegedly took place, or when. (Doc. t5 at ¶ 33). In response to Defendants' motion for summary judgment, Maas simply refers once again to the documents contained in "Exhibit C" for evidentiary and

27

factual support. (Doc. 60, at 7 & 23). Even taking these documents into account,

Maas fails to explain how they support any of the conclusory allegations of

constitutional violations set forth in Count III of the Amended Complaint. (Doc.

60-1 at 1-68). The letters, handwritten notes, photographs, and other documents

that make up Maas's "Exhibit C" do not provide any specific factual or evidentiary

support for Maas's allegations that the Individual Defendants and City of Billings

violated her rights as guaranteed by the Article II, Sections 3, 4, and 17 of the

Montana Constitution. Because Maas has not provided any facts or supporting

evidence, the Individual Defendants and City of Billings are entitled to summary

judgment as to Count III of the Amended Complaint.

    4.   <u>Statutory Immunity</u>

Finally, the Individual Defendants argue that the statutory immunity

afforded by Mont. Code Ann. § 2-9-305 provides an additional basis for dismissing

Maas's state law claims against them, as set forth in Counts I-III.

The second sentence of Mont. Code Ann. § 2-9-305(5) provides that where

an action is brought against a governmental entity based on the conduct of the

employee, the employee is entitled to immunity if the governmental entity

acknowledges that the employee's conduct upon which the claim is brought was

undertaken in the course and scope of the employee's employment, unless the claim falls within certain exclusions, none of which are appliable here.

Here the City of Billings has acknowledged that, for purposes of Maas's allegations, the Individual Defendants were acting in the course and scope of their employment as police officers with the City of Billings. (Doc. 55, at ¶¶ 2-7). Accordingly, even Maas's claims against them did not fail for the reasons set forth above, the Individual Defendants are immune from liability under Mont. Code Ann. § 2-9-305.

### C.   Federal Law Claims - Section 1983  (Count IV)

Count IV of the Amended Complaint is titled "Violation of Federal Constitutional Rights, Bill of Rights, and Amendment 14." (Doc. 14, at 8). In Count IV, Maas cites the due process and equal protection provisions of the Fourteenth Amendment, which state that no state shall "deprive any person of life, liberty, or property, without due process of law" or "deny to any person within its jurisdiction   the equal protection of the laws." (Doc. 14, at 8). The remainder of Count IV alleges that "[e]ach of the Defendants to this Complaint knowingly and intentionally engaged in a course of conduct that repeatedly denied and violated the Plaintiff each of the rights guaranteed under the U.S. Constitution, Bill of

Rights and Amendment 14 as specified in this Complaint and Claim and Allegations One through Three." (Doc. 14, at 8).

The Court construes these allegations as a claim asserted under 42 U.S.C. § 1983, which provides a cause of action for the violation of federal constitutional rights by persons acting under color of state law. To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

### 1.   Individual Defendants

As they do with respect to Maas's state law claims, the Individual Defendants move for summary judgment as to Count IV on the ground that Maas has not provided any factual detail or evidence to substantiate her conclusory allegations. As discussed above, Maas's discovery responses do not identify or explain the basis of her § 1983 claim, do not provide any factual support as to what conduct violated which of her federal constitutional rights, who is alleged to have violated her constitutional rights, when the alleged conduct took place, or the location of such alleged conduct. (Doc. 55 at ¶ 34).

In response to Defendants' motion for summary judgment on her § 1983 claim, Maas simply refers once again to the documents contained in "Exhibit C" for evidentiary and factual support. (Doc. 60, at 7 & 25). Even assuming these documents are properly before the Court, the letters, handwritten notes, photographs, and other documents that make up Maas's "Exhibit C" do not provide any specific factual or evidentiary support for Maas's claim that the Individual Defendants somehow violated her federal constitutional rights to equal protection and due process. (Doc. 60-1 at 1-68). Because Maas has not produced any evidence or factually supported argument that any of the Individual Defendants violated a constitutional right, the Individual Defendants are entitled to summary judgment.

The Individual Defendants also raise qualified immunity as a basis for summary dismissal of Count IV. As state actors, the Individual Defendants are entitled to qualified immunity if their conduct "either does not violate a federal constitutional right, or the constitutional right was not clearly established on the date of the alleged violation." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing *Saucier v.* Katz, 533 U.S. 194, 201 (2001). Qualified immunity provides an immunity from suit rather than a mere defense to liability. *Mattos v. Agarano*, 590 F.3d 1082, 1086 (9th Cir. 2010).

31

Courts addressing a law enforcement officer's claim of qualified immunity are to follow the two-part analysis established by the United States Supreme Court in *Saucier*. First, the court considers whether "[t]aken in the light most favorable to the party asserting the injury," the facts "as alleged show the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If there was no constitutional violation, no further inquiry is necessary. *Saucier*, 533 U.S. at 201. If the facts as alleged do show that the officer's conduct violated a constitutional right, however, the court must next consider "whether the right was clearly established in light of the specific context of the case." a*l-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009). At both steps of the inquiry, the plaintiff bears the burden of establishing her claim and overcoming the officer's assertion of qualified immunity. *Felarca v. Birgenau*, 891 F.3d 809, 815 (9th Cir. 2018).

Here, Maas cannot satisfy the first step of the qualified immunity analysis because she has not presented evidence of a constitutional violation. In response to the Individual Defendants' motion for summary judgment, Maas makes various conclusory allegations but provides no factual or evidentiary support. For example, Maas asserts that Billings police officers are "trained to [constitutional] rights" and "[f]or the Defense to state that no indication exists that any Billings Police Officer acted unreasonably toward the Plaintiff at any time based on their records is a

distortion of the truth…" (Doc. 60 at 25-26). As discussed above, however, Maas does not provide any evidence demonstrating that her constitutional rights were violated by any of the Individual Defendants. Because Maas cannot show that the Individual Defendants violated her constitutional rights, she cannot satisfy the first step of the inquiry and the Individual Defendants are therefore entitled to qualified immunity.

The Individual Defendants further argue that Count IV is barred by the statute of limitations. The Court determines the statute of limitations for § 1983 claims by looking to the forum state for the statute of limitations applicable to personal injury cases. *Thompson v. City of Bozeman,* 2020 WL 6144808, at \*5 (D. Mont. Oct. 20, 2020). In Montana, the statute of limitations for personal injury cases is three years. *Thompson*, 2020 WL 6144808, at \*5 (citing Mont. Code. Ann. § 27-2-204). With the exception of Officer Lange's "CAD Narrative" report dated June 7, 2017, all other documents in Exhibit C involving individual Billings Police Department officers date back to events prior to June 5, 2016. Maas did not file this action until June 5, 2019, which means that any § 1983 claim based on those events is barred by the statute of limitations. As to Officer Lange, Maas's § 1983 claim fails for the reasons outlined above.

Accordingly, the Individual Defendants are entitled to summary judgment on Count IV of the Amended Complaint.

### 2.    City of Billings

As set forth in Count IV of the Amended Complaint, Maas's § 1983 claim does not differentiate between the City of Billings and the Individual Defendants, and thus makes the same allegations against all Defendants. (Doc. 14 at 8). The City of Billings moves for summary judgment on the ground that Maas has not shown that a municipal custom, policy, or practice played a part in the constitutional violations alleged or otherwise presented any evidence that would establish the necessary prerequisites for municipal liability.

Municipalities like the City of Billings "are considered 'persons' under § 1983 and may be sued for causing a constitutional deprivation." *Estate of Ostby v. Yellowstone County*, 2020 WL 534962, at *2 (D. Mont. Jan. 13, 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Estate of Ostby*, 2020 WL 534962, at *2 (citing *Monell*, 436 U.S. at 691)). "Rather, liability only attaches where the municipality itself causes the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

34

to represent official policy." *Estate of Ostby*, 2020 WL 534962, at *2 (internal

quotations omitted) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968,

983 (9th Cir. 2002)).

Therefore, to establish municipal liability under § 1983, a plaintiff must

show "(1) that [s]he possessed a constitutional right of which [s]he was deprived;

(2) that the municipality had a policy; (3) that this policy 'amounts to deliberate

indifference' to the plaintiff's constitutional right; and (4) that the policy is the

'moving force behind the constitutional violation.'" O*viatt v. Pearce*, 954 F.2d

1470, 1474 (9th Cir. 1992) (*quoting City of Canton v. Harris*, 489 U.S. 378, 389-

91(1989)).

Here, Maas has not established the requisite elements. First, as discussed

above, Maas has not presented any evidence that constitutional rights were

violated. She has not clearly identified or explained the basis of her § 1983 claim,

has not provided actual support as to what conduct violated which of her federal

constitutional rights, who is alleged to have violated her constitutional rights, when

the alleged conduct took place, or location of such alleged conduct. (Doc. 55 at

¶ 34). Second, Maas has not provided any evidence demonstrating, that any alleged

constitutional violation could be attributed to an official policy or custom of the

City of Billings. (Doc. 55 at ¶¶ 36-37). *Lee v. City of Los Angeles*, 50 F.3d 668,

681 (9th Cir. 2001). Nor has Maas presented any evidence that the City of Billings was deliberately indifferent to any constitutional violations, or that the City of Billings caused, or was the moving force, behind any alleged injury. (Doc. 55 at ¶¶ 36-37). Thus, to the extent Maas seeks to hold the City of Billings liable under § 1983, her claim fails as a matter of law. The City of Billings' motion for summary judgment on Maas's § 1983 claim should be granted accordingly.

## IV.   **Conclusion**

For the reasons set forth above,

IT IS RECOMMENDED that Defendant City of Billings' Motion for Summary Judgment (Doc. 51) be GRANTED and Defendants Officer Keightly, Officer Lange, Officer Aguilar, Officer Schaff, Sergeant Conrad, and Chief St. John's Motion for Summary Judgment (Doc. 53) GRANTED, and this case be DISMISSED.

On May 25, 2021, Maas filed a Request for Permission to Address Defense Response to Disputed Summary Judgment Issues. (Doc. 67). The Court construes Maas's filing as a motion for leave to file a sur-reply. Sur-replies are not permitted as a matter of course. See Local Rule 7.1(d)(1)(D) (leave of court required). Maas reiterates many of the arguments, allegations, and accusations set forth in her response brief, and again requests "more time and the opportunity to present

36

further documentation, evidence and details that clarify, explain and support the facts more completely." (Doc. 67 at 3-4). Maas had ample time to conduct fact discovery, which closed on October 19, 2020, and has had a full opportunity to respond to Defendants' summary judgment motions. Maas has not shown good cause for filing a surreply and there is no basis for allowing Maas to conduct additional discovery. Accordingly,

IT IS ORDERED that Maas's Request for Permission to Address Defense Response to Disputed Summary Judgment Issues is DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 9th day of June, 2021.

_____
Kathleen L. Desoto
United States Magistrate Judge